# IN THE COURT OF APPEALS OF IOWA

No. 14-0497
Filed February 11, 2015

IN THE MATTER OF THE
GUARDIANSHIP OF TAVONJIA
DENISE HILL,

TAVONJIA DENISE HILL,
          Ward-Appellant.
_____

          Appeal from the Iowa District Court for Black Hawk County, Joel A.

Dalrymple, Judge.


          A ward challenges the reinstatement of a full guardianship. **REVERSED**

**AND REMANDED.**


          Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, for appellant.

          Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellee Black

Hawk County.

          Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer,

Assistant Attorney General, for appellee State of Iowa.

          Joseph D. Thornton, Waterloo, for intervenor Ravenwood Nursing and

Rehabilitation.


          Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Ward Tavonjia Hill wishes to end her guardianship. On appeal, she challenges rulings issued by the district court amid a series of hearings and the ultimate reinstatement of a full guardianship. Because the district court denied her statutory right to be personally present at the final hearing, we reverse the decision and remand for new proceedings.

## I.    Background Facts and Proceedings

Hill is now forty years old. In 1997, she was involved in a car accident that left her with a traumatic brain injury, paraplegia, and a neurogenic bowel and bladder. She has been under a guardianship since the accident.

In a pro se letter dated September 9, 2013, Hill requested her guardianship be dissolved. She told the court she believed she could take control of her life and find "independent living in the community." The court set the matter for hearing on October 28, 2013, but the guardian failed to appear. The district court accepted evidence offered by Hill, including a recommendation from Dr. Robert Grittmann that, with certain accommodations, Hill could live independently. But noting the "lopsided" nature of the proof, the court left the record open for further hearing. The court removed the previous guardian, a family member who no longer wished to serve, and appointed the Black Hawk County Conservator's Office as guardian,[1] with full guardianship powers.

At this time, Hill was residing at Ravenwood Nursing and Rehabilitation Center. On December 3, 2013, that facility filed a motion to intervene in the

---

[1] That office had previously served as Hill's guardian from 2005 until 2013.

guardianship proceedings. The motion alleged Hill engaged in disruptive conduct which placed herself and other residents at risk. Along with that motion, Ravenwood filed an application requesting Hill be placed in another facility because of her violent behavior. The court granted the motion to intervene.

On December 27, 2013, following a contested hearing, the district court found Hill had sufficient mental capacity to make decisions regarding her behavior. The court stated: "Upon further hearing, the Court was not presented with clear and convincing evidence that the ward's decision-making capacity continues to be so impaired that the guardianship should not be terminated upon considering Iowa Code Section 633.552(2)(a) (2013)." The district court modified Hill's status "to a limited guardianship and determined that upon obtaining suitable living arrangements and other implementations of the accommodations as set forth by Dr. [Robert] Grittmann, the guardianship should terminate."

On January 18, 2014, Hill allegedly assaulted a member of the Ravenwood staff. Court exhibits show the police brought Hill to the emergency department of Allen Memorial Hospital in Waterloo and then she was transferred to Iowa Lutheran Hospital in Des Moines, where she received psychiatric care.

On January 31, 2014, Black Hawk County filed an "Application for Review of Guardianship Powers and Placement Hearing." The application asserted there had been a "substantial change in circumstances regarding the ward's medical situation" since the court entered the order for a limited guardianship. The county asserted "it now appears that a more restrictive setting may be

necessary and that full guardianship powers should be granted to the guardian in order to enable said placement."

The district court set the county's application for hearing on February 14, 2014.[2] Hill's counsel filed a motion asking for Hill to be transported to Waterloo for the hearing or alternatively to participate by telephone. On February 12, 2014, the county conservator wrote to the judge concerning "unanticipated complications arising regarding the ability to have Tavonjia transported to the hearing on February 14th." The court denied Hill's request to be transported and ordered Iowa Lutheran to make the ward available by telephone.

At the start of the February 14 hearing, Hill objected to participating by telephone and invoked her right to be personally present at the proceeding. The court overruled her objection.

Following the hearing, the district court modified its appointment of the Black Hawk County Conservator's Office from limited to full guardian. The court also granted the guardian power to place Hill in a more restrictive living arrangement. Hill now appeals.

On appeal, Hill claims the district court erred in reinstating the full guardianship and granting the power to place her in a more restrictive living condition. She argues the guardianship should have been terminated after the October 28, 2013 hearing. Hill also claims the district court erred in not considering a limited guardianship after the February 14, 2014 hearing. Finally, Hill claims the district court violated her statutory and constitutional rights in going

---

[2] A hearing had already been set for that day to consider Ravenwood's request for an injunction barring Hill from its premises.

forward with the February 14 hearing without her personal presence. We address only the last issue, finding it dispositive of the appeal.

## II. Standards of Review

Actions to modify or terminate a guardianship are equitable in nature, and thus our review is de novo. Iowa Code § 633.33; *see In re Guardianship of Kennedy*, 845 N.W.2d 707, 709 (Iowa 2014). We give weight to the factual findings of the probate court, but are not bound by those findings. *Kennedy*, 845 N.W.2d at 709. We also review constitutional issues de novo. *In re Guardianship of Hedin*, 528 N.W.2d 567, 575 (Iowa 1995). To the extent we are interpreting a statutory right, our review is for legal error. *See In re Estate of Waterman*, 847 N.W.2d 560, 565 (Iowa 2014).

## III. Personal Presence at Hearing

Hill alleges the district court violated her statutory and constitutional rights by refusing her request to be personally present at the February 14, 2014 hearing on the county's motion to reinstate a full guardianship.

The guardianship statute sets out a ward's rights as follows:

> The court shall ensure that all proposed wards entitled to representation have been provided with notice of the right to representation and right to be personally present at all proceedings and shall make findings of fact in any order of disposition setting out the manner in which notification was provided.

Iowa Code § 633.561(2). [3]

---

[3] The statutory right for wards to be personally present does not describe any exceptions. In contrast, the rules governing involuntary civil commitment proceedings contemplate exceptions to the respondent's presence. *See* Iowa Ct. R. 12.19.

Hill also contends her due process rights were violated under the Fourteenth Amendment to the United States Constitution and article 1 sections 1 and 9 of the Iowa constitution. She cites *Hedin* for the proposition that a guardianship action is akin to a criminal action given the possibility an individual could be deprived of a liberty interest. *See* 528 N.W.2d at 573–75 (opining "[g]uardianship involves such a significant loss of liberty that we now hold that the ward is entitled to the full panoply of procedural due process rights comparable to those present in involuntary civil commitment proceedings").

Hill, who had been personally present at all prior proceedings, was being treated at Iowa Lutheran Hospital in Des Moines in early February 2014. Her counsel filed a motion on February 12, 2014, requesting the guardian provide transportation for Hill to be personally present at the hearing or in lieu of transportation, the ability to appear by telephone. The district court initially granted the transport order. But then the judge received correspondence from the guardian citing "unanticipated complications" associated with transporting Hill from Des Moines to Waterloo.

The email suggested, in part, that transportation would not be possible because Hill was confined to a wheelchair and would need assistance in transferring herself into and out of a vehicle. The email further stated: "Concern was also expressed about her ability to ride for 4 hours total in a car in the sitting position, due to the nature of her pressure wounds and the fragility of the tissue even though it is now healed." The letter went on to explain that neither the hospital nor sheriff's office was able to provide the necessary assistance to

transport Hill. The guardian rejected the possibility of an ambulance transport because "this is not something her insurance would pay for as it would only cover if going to and from medical facilities."[4] The guardian also rejected the possibility of a private transportation company because of security concerns.

After receiving this information and without a hearing on the motion, the district court denied the transportation order and provided for Hill to participate by telephone. The correspondence from the guardian was not entered into the record as an exhibit, nor was Hill's attorney able to cross-examine the guardian on the contents of the letter. Instead, the correspondence was attached to the court's ruling.

At the start of the February 14 hearing, Hill objected to participating only by telephone and requested to be personally present at the proceeding. The court overruled her objection and allowed the hearing to go forward. Hill participated in the hearing by telephone, and the court accommodated her requests to speak confidentially with her attorney.

On appeal, the guardian does not dispute Hill had a right to be present at the hearing. Instead, the guardian argues the motion filed by Hill's attorney stipulated to the alternative option of appearing by telephone. The guardian also contends Hill should have formally sought a continuance of the hearing. We are not convinced by either contention. The district court directly denied Hill's request to be personally present at the hearing, preserving the issue for our review.

---

[4] Hill was transported from Waterloo to Iowa Lutheran Hospital by ambulance.

The guardian requested reinstatement of a full guardianship and the possibility of a more restrictive placement for Hill. With her liberty interests thus at stake, we believe the district court violated the procedure outlined in the guardianship statute by summarily denying the ward's request to be personally present. Here, the court did not engage in any colloquy with the ward and did not take any evidence concerning the guardian's email listing the drawbacks to transporting Hill.

Under these specific facts, we find Hill's statutory right was violated when she was denied the opportunity to appear in person. The inconveniences of transporting Hill back to Waterloo outlined in the guardian's email do not— without more inquiry—justify depriving her of the statutory right to be present at the guardianship hearing. *Cf. State v. Rogerson*, 855 N.W.2d 495, 506 (Iowa 2014) (stating, in criminal context, "mere convenience, efficiency and cost-saving are not sufficiently important public necessities" to justify denial of face-to-face confrontation).

On appeal, the guardian also suggests Hill's telephonic appearance satisfied the statutory requirement for her to be personally present. We disagree. One court has offered the following insightful comparison of telephonic hearings and personal appearances:

> We do not wish to overstate the benefits of communicating in person, nor the drawbacks of telephone communication. We live in an era when efficiency often dictates that many communications be machine-facilitated. When the technology employed is operating well, such communications are at least good enough to transmit basic information. But the potential for empathy and nuanced understanding is much greater in person-to-person communications than in any of the various forms of telecommunicating. Likewise,

> when a party is denied an in-person hearing before a trier of fact, there is a risk that the party will be less able to convey the message that his story is the truth.

*Whitesides v. State, Dep't of Public Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1137 (Alaska 2001); *see also Shegan v. Commw. Unemp't Comp. Bd. of Review*, 564 A.2d 1022, 1025 (Pa. Commw. Ct. 1989) ("[W]e cannot find that an offer to conduct a telephonic hearing served as an adequate substitute for an in-person *hearing* so as to comport with Claimant's due process right to fully present her case.").

Because Hill was denied her right to be personally present at the hearing under section 633.561(2), we reverse the district court's order reinstating the full guardianship and remand for a new hearing.[5] On remand, the parties will be allowed to present information as to Hill's current situation.

**REVERSED AND REMANDED.**

---

[5] Because we reach this result on a statutory ground, we do not rule on Hill's constitutional claims.